IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT BLYTHE, JR. AND JOHN BLYTHE : <br> : <br> : <br> v. : <br> : <br> OFFICER JOHN SCANLAN, III AND : <br> SHARON HILL BOROUGH : <br> : | Civil Action No. 14-7268 |

MEMORANDUM OPINION

**RUFE, J.**                                                              **August 11, 2015**

Plaintiffs have filed a civil rights action against Sharon Hill Borough and Sharon Hill Police Officer John Scanlan, III, pursuant to 42 U.S.C. §1983 and state tort law. Defendants have filed a motion to dismiss. For the reasons set forth herein, the Court will grant motion.

**I.    FACTS ALLEGED IN THE AMENDED COMPLAINT**[1]

On December 27, 2012, Robert Blythe, Jr. was at his girlfriend Ishanya Platt's house in Sharon Hill, Pennsylvania. While there, he told her he wanted to end their relationship. Platt's mother and step-father then physically threw Robert out of their house. When Robert was walking away from the house, Platt's step-father started following Robert down the street and yelling at him. While pursuing him, Platt's step-father reached into the waistband of his pants, pulled out a gun, and pointed it at Robert. Robert then frantically ran down the street until he was able to call his uncle John J. Blythe, a City of Chester Police Officer.

Shortly thereafter, John Blythe picked up Robert. They returned together to Platt's house, but no one answered at the house. As they were leaving the area, Defendant Scanlan stopped

---

[1] Doc. No. 8.

Plaintiffs and questioned them. Plaintiffs explained to Officer Scanlan what had just occurred, reporting that Platt's step-father had threatened Robert with a handgun. Officer Scanlan handcuffed and arrested them in front of Platt's house, and charged them with disorderly conduct. After hearing their account of events, Plaintiffs were taken to the Sharon Hill Borough police station where they were detained for an unspecified period of time. Following numerous proceedings in magisterial court, the charges against each Plaintiff were withdrawn.

In Count I, Plaintiffs allege they were falsely arrested by Officer Scanlan on December 27, 2012, and also assert claims against Officer Scanlon for false imprisonment and malicious prosecution, pursuant to the Fourth Amendment and § 1983. Count IV asserts a state law malicious prosecution claim against Officer Scanlon, claiming that he manufactured false evidence and ignored exculpatory evidence in an attempt to secure a conviction. Count V asserts a claim against Officer Scanlan for intentional infliction of emotional distress, especially as to John Blythe, who suffered professional embarrassment because of the prosecution. Although it is not clearly pled, the Complaint may also be read to allege assault and battery claims against Officer Scanlan stemming from the arrest. In addition to the claims against Officer Scanlon, in Count II, Plaintiffs assert a Monell claim under § 1983 against Defendant Sharon Hill Borough, alleging that "as a matter of policy and practice," the Borough has failed to properly train, supervise, and discipline Officer Scanlan regarding the "constitutional, statutory, and departmental limits of this authority." The Complaint does not contain a Count III.

Defendants moved to dismiss the amended complaint under Rule 12(b)(6), arguing that Plaintiffs failed to set forth sufficient factual allegations to state cognizable causes of action against Officer Scanlan under state and federal law, that Officer Scanlan is entitled to qualified immunity, and that Plaintiffs failed to adequately state a claim for municipal liability under

*Monell*. In the alternative, Defendants seek a more definite statement of the pleading, pursuant to Rule 12(e).

## II.     STANDARD OF REVIEW

Dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted is appropriate where a plaintiff's "plain statement" does not possess enough substance to show that plaintiff is entitled to relief.[2] In determining whether a motion to dismiss should be granted the court must consider those facts alleged in the complaint, accepting the allegations as true and drawing all logical inferences in favor of the non-moving party.[3] Something more than a mere *possibility* of a claim must be alleged; plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."[4] The court has no duty to "conjure up unpleaded facts that might turn a frivolous . . . action into a substantial one."[5] Furthermore, courts are not bound to accept as true legal conclusions couched as factual allegations.[6]

## III.    DISCUSSION

### A.     Claims Against Officer Scanlan

#### 1.      *False Arrest and False Imprisonment Claims*

To bring a claim for false arrest under 42 U.S.C. § 1983, a plaintiff must show that the arresting officer lacked probable cause to make the arrest.[7] If the plaintiff is subsequently

---

[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

[3] *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *Fay v. Muhlenberg Coll.,* No. 07-4516, 2008 WL 205227, at *2 (E.D. Pa. Jan. 24, 2008).

[4] *Twombly*, 550 U.S. at 570.

[5] *Id.* at 562.

[6] *Id.* at 555, 564.

[7] *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988).

imprisoned after an arrest made without probable cause, he may also bring a claim for false imprisonment.[8] An officer has probable cause for arrest when "the totality of facts and circumstances are sufficient to warrant an ordinary prudent officer to believe that the party charged has committed an offense."[9]

According to the Amended Complaint, Plaintiffs were charged with disorderly conduct. Under Pennsylvania law,

> A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
> (1) engages in fighting or threatening, or in violent or tumultuous behavior;
> (2) makes unreasonable noise;
> (3) uses obscene language, or makes an obscene gesture; or
> (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.[10]

Generally, disorderly conduct is a summary offense, but in some circumstances it is a misdemeanor of the third degree. The statute gives police officers a tool with which to preserve the public peace when confronted with behavior which may cause or risk disorder or a public disturbance. "Under the statute, whether a defendant's words or acts rise to the level of disorderly conduct hinges upon whether they cause or unjustifiably risk a public disturbance."[11]

Plaintiffs argue that Officer Scanlan "had no probable cause" for their arrest and detention on charges of disorderly conduct. However, the Amended Complaint alleges that

---

[8] *Garcia v. Cnty. of Bucks,* 155 F. Supp. 2d 259, 265 (E.D.Pa.2001)(citing *Groman v. Twp. of Manalapan,* 47 F.3d 628, 636 (3d Cir.1995)). It is not clear what Plaintiffs mean when they assert a claim for "false detention." Clearly, they were detained by the police before and during their arrest and processing. However, Plaintiffs do not allege that they were imprisoned at any time. Accordingly, it is possible that Plaintiffs intended to assert a claim for improper seizure, rather than false imprisonment. Because the Court finds that Plaintiffs failed to adequately allege that Officer Scanlan lacked probable cause to arrest, the Court need not clarify the intent of the parties before ruling.

[9] *Id.* (citing *Sharrar v. Felsing*, 128 F.3d 810, 817-18 (3d Cir. 1997)).

[10] 18 Pa. C.S.A. §5503.

[11] *Com. of Pa. v. Hock*, 728 A.2d 943, 946 (Pa. 1999).

Robert returned to the Platt home with his uncle (allegedly a police officer in another jurisdiction), despite having been physically removed from the house by two adults, one of whom had allegedly pursued him with a firearm. Plaintiffs also allege, without details, that they were attempting to communicate with the occupants of the Platt home just before Officer Scanlan stopped them. They also allege that they informed Officer Scanlan that a resident of the home had very recently been pursuing Robert with a gun and threatening him. Under the circumstances as alleged, a reasonable police officer could have determined that Plaintiffs' presence in front of the Platt home, and attempts to engage with the occupants, served no legitimate purpose, but instead created a risk of public disorder and possibly violence. The reasonableness of the officer's judgment must only be judged under the split-second, tense and uncertain conditions he encountered on the scene.[12] Based on the facts alleged, the Court cannot infer that Officer Scanlan acted without probable cause when he charged them with disorderly conduct and arrested them, and will dismiss the false arrest claims.

With regard to the false imprisonment claim, Plaintiffs allege that Officer Scanlan stopped them in front of Platt's home, and proceeded to arrest them, charge them with disorderly conduct, and take them to the police station where they were detained for an unspecified period of time. Plaintiffs do not allege that bail was set or required, that they were restricted from travel, required to report to pre-trial services, or otherwise subject to restrictive conditions after the citations for disorderly conduct were issued.[13] Because Plaintiffs have failed to adequately allege that they were arrested without probable cause, and they allege no other basis for finding that

---

[12] *Saucier v. Katz*, 553 U.S. 194, 204-205 (2001).

[13] *See DiBella v. Borough of Beachwood*, 407 F.3d 599, 600 (3d Cir. 2005) (holding that there was no seizure or detention to establish a Fourth Amendment violation in very similar factual circumstances).

they were detained unlawfully, the Court will also dismiss the false detention/imprisonment claim.

### 2. *Malicious Prosecution Claims*

To bring a claim for malicious prosecution under § 1983, a plaintiff must show "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."[14] The elements for a state law claim are the same, except there is no deprivation of liberty requirement.[15]

The citations for disorderly conduct issued to Plaintiffs were summary or misdemeanor criminal offenses.[16] Defendants do not dispute that the charges were dismissed. At issue is whether the proceedings were initiated without probable cause, and whether Officer Scanlan acted maliciously or for a purpose other than bringing plaintiff to justice.

With regard to these elements, Plaintiffs allege that Officer Scanlan "manufactured false evidence against the plaintiffs, ignored exculpatory evidence that in fact plaintiff Robert Blythe was threatened with a gun, and knowingly used that evidence in an attempt to secure a wrongful criminal conviction against the plaintiffs."[17] Plaintiffs allege no facts from which the Court can infer that Officer Scanlan manufactured false evidence, or "knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed

---

[14] *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003) (citing *Donahue v. Gavin*, 280 F.3d 371, 379-80 (3d. Cir. 2002)).

[15] *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 791 (3d Cir. 2000).

[16] 18 Pa.C.S.A. § 5503.

[17] Amended Complaint at ¶¶ 36-37.

discretion."[18] Moreover, as noted above, the fact that Robert was threatened with a gun by Platt's step-father is not obviously "exculpatory" of the disorderly conduct charge, and rather supports a finding of probable cause, as Robert successfully evaded Platt's armed step-father, called his uncle, waited for his uncle to arrive, and then uncle and nephew voluntarily returned to the home in which Platt and her step-father lived, from which Robert had recently been physically removed under heated circumstances, and attempted to "contact" the residents. There are simply no allegations from which the Court can infer that Officer Scanlon initiated criminal proceedings without probable cause, or for a purpose other than bringing Plaintiffs to justice.[19]

### 3. *Intentional Infliction of Emotional Distress*

To bring a claim for intentional infliction of emotional distress under Pennsylvania state law, a plaintiff must show: (1) the defendant's conduct was extreme and outrageous; (2) it was intentional or reckless; (3) it caused the plaintiff emotional distress; and (4) the distress was severe.[20] "Extreme and outrageous conduct is that which goes beyond all bounds of decency such that the action would be characterized as atrocious and utterly intolerable in a civilized society."[21] A "recitation of the facts to an average member of the community … [must] lead him

---

[18] *Merkle*, 211 F.3d at 791(quoting *Gatter*, 67 F. Supp. 2d at 521).

[19] Even if, in hindsight, it were clear that Defendants were arrested, detained, and/or prosecuted without probable cause, "[t]he doctrine of qualified immunity protects governmental officials when they are sued in their personal capacity from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Such entitlement is an *immunity from suit* rather than a mere defense to liability." *Fleck v. Trustees of University of Penn.*, 995 F.Supp.2d 390, 405 (E.D. Pa. 2014) (internal quotations and citations omitted). The qualified immunity standard grants immunity even when an official makes an error in judgment, an error in law, or an error in fact, so long as that official was not plainly incompetent or knowingly violating the law. *Hunter v. Bryant*, 502 U.S. 224, 229 (1991). There are no factual allegations in the Amended Complaint from which the Court can infer that Officer Scanlan was plainly incompetent or knowingly violating the law. Thus, the doctrine of qualified immunity provides an alternative basis for the Court's dismissal of the claims against Officer Scanlan.

[20] *Hooten v. Pa. Coll. of Optometry*, 601 F. Supp. 1151, 1154 (E.D. Pa. 1984) (citing *Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir. 1979)); *see also* Restatement (Second) of Torts § 46 (1965).

[21] *Id.* (citation omitted).

to exclaim, 'Outrageous!'"[22] However, "[m]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not constitute outrageous conduct.[23] A plaintiff must also allege a physical injury, harm or illness caused by the defendant's alleged outrageous conduct, of such severity that the plaintiff requires medical or psychological treatment.[24]

The allegations of the Amended Complaint do not approach the high threshold necessary to support a reasonable inference that Officer Scanlan's conduct was "extreme and outrageous," nor is it alleged that any injury incurred is supported by competent medical evidence.

    4.    *Assault and Battery*

To the extent that Plaintiffs allege they were assaulted and battered by Officer Scanlan as a result of the arrest itself, these claims must fail. A plaintiff cannot sustain a claim for assault or battery based on an arrest without a meritorious claim of excessive force.[25] Plaintiffs do not allege that Officer Scanlan used excessive force when making their arrest, nor are the facts pled suggestive of an excessive force claim. For these reasons, Plaintiffs have not properly pleaded claims for assault or battery against Officer Scanlan.

    **B.**    **Failure to Train, Supervise, and Discipline Claim Against Borough of Sharon Hill Police Department**

---

[22] *Ruder v. Pequea Valley Sch. Dist.*, 790 F. Supp. 2d 377, 397 (E.D. Pa. 2011) (citing *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987 (Pa. Super. Ct. 1997)).

[23] *Great W. Life Assur. Co. v. Levithan*, 834 F. Supp. 858, 862 (E.D. Pa. 1993) (citing *Kazatsky v. King David Memorial Park, Inc.*, 527 A.2d 988, 992 (Pa. 1987)).

[24] *Corbett v. Morgenstern*, 934 F. Supp. 680, 684 (E.D. Pa. 1996) (citations omitted).

[25] *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994)(holding a police officer "may be held liable for assault and battery when a jury determines that the force used in making an arrest is unnecessary or excessive").

Pursuant to 42 U.S.C. § 1983, a municipality can only be held liable if alleged constitutional injuries result from policies, practices, decisions, or customs of that entity.[26] For example, Plaintiffs can state a claim against a municipality, pursuant to § 1983, by adequately alleging that the municipality has failed to adequately train, supervise, or discipline its employees with regard to some right, and that it manifested a deliberate indifference to the constitutional rights of citizens with whom the poorly trained employees would interact.[27] "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program."[28] This is generally accomplished by pleading facts suggesting a "pattern of similar constitutional violations,"[29] although in rare instances, a single, but predictable, incident is enough to find municipal liability.[30] Because this is the most "tenuous" type of municipal liability claim, Plaintiffs' burden is high.[31] It is insufficient to "merely allege[] that a single injury could have been avoided if an employee had

---

[26] *Monell v. Dept. of Social Serv. of N.Y.*, 436 U.S. 658, 694 (1978) (liability under §1983 cannot be premised on a theory of *respondeat superior*; to establish liability, a plaintiff must demonstrate the existence of an official policy or custom which caused the constitutional injury).

[27] *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011); *Wood v. Williams*, 568 F. App'x 100, 105 (3d Cir. 2013); *Torres v. City of Allentown*, No. 07-0934, 2008 WL 2600314, at *5 (E.D. Pa. Oct. 31, 2013).

[28] *Connick*, 131 S. Ct. at 1360 (internal quotations and citations omitted).

[29] *Id.* at 1360; *see also Williams v. Borough of Sharon Hill*, No. 12-5395, 2013 WL 4743471 at *4 (requiring plaintiff to plead such facts).

[30] *Connick*, 131 S. Ct. at 1361; *see also City of Canton v. Harris*, 489 U.S. 378, 390 n. 10 (1989) (hypothesizing liability for "arming police officers without training them"); *Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997) (hypothesizing liability for the failure to equip police officers with "specific tools to handle recurring situations").

[31] *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011).

had better or more training."[32] Instead, Plaintiffs must show that "the unconstitutional consequences of failing to train [are] patently obvious"[33] or "highly predictable."[34]

Here, the Court assumes that Plaintiffs are asserting that the Borough failed to adequately train Officer Scanlan in the requirement that all arrests and detentions be supported by probable cause. However, Plaintiffs fail to allege facts sufficient to state a failure-to-train claim. Plaintiffs have not specifically identified any facts supporting the allegation that the Borough provided inadequate training, supervision, or discipline. Second, Plaintiffs fail to plead facts to support an inference of a pattern of similar violations or other basis on which the Court could infer that the Borough was on notice that the constitutional violation alleged was a highly predictable consequence of the training, supervision, or discipline provided to its police officers by the Borough. Instead, Plaintiffs merely restate the elements of the claim, alleging that the Borough "failed to discipline, train, supervise or otherwise sanction police officer John Scanlan" and failed to properly train Officer Scanlan "with respect to the constitutional, statutory and departmental limits of his authority." The vague and conclusory allegations in the Amended Complaint do not allow the Court to infer that a clear failure in the Borough's training, supervising, or disciplinary practices caused or encouraged Officer Scanlan to improperly cite individuals for disorderly conduct without probable cause.[35]

---

[32] *Kane v. Chester Cnty. Dep't of Children, Youth & Families*, 10 F. Supp. 3d 671, 689 (E.D. Pa. 2014) (quoting *Connick*, 131 S. Ct. at 1363-65) (internal quotation marks omitted).

[33] *Connick*, 131 S. Ct. at 1361.

[34] *Id.*

[35] In Pls.' Mem. of Law in Opp'n To Defs.' Mot. to Dismiss, Plaintiffs suggest the Borough had notice of the need to train, supervise, discipline, or terminate Officer Scanlan because of "prior incidents of the misconduct of these officers and their repeated acts of violating the civil rights of individuals … by engaging in illegal false arrest, false imprisonments, and malicious prosecutions" and the source of such notice is "prior civil lawsuits, internal affairs complaints, and complaints from the general community." However, these assertions are entirely general, and do not suffice under the circumstances, especially as Plaintiffs provide no illustrative example of Officer Scanlan's alleged past misconduct to substantiate their vague and conclusory statements.

## IV. CONCLUSION

For the reasons stated here, Defendants' motion to dismiss the Amended Complaint will be granted. An appropriate Order follows.